IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | | |
|---|---|---|
| EDWARD BUCKALEW, as Executor of the Estate of JEFFREY BUCKALEW, Deceased, et al. | : : : | No. 0:13-cv-62758-WPD |
| | : | |
| Plaintiffs | : | JURY TRIAL DEMANDED |
| v. | : | |
| | : | |
| COLUMBIA AIRCRAFT SALES, INC., et al. | : | |
| | : | |
| Defendants | : | |

**PLAINTIFFS' SECOND RENEWED MOTION TO STAY
ACTION AND MEMORANDUM OF LAW IN SUPPORT**

Plaintiffs, by and through undersigned counsel, hereby files their Second Renewed Motion to Stay Action and as grounds therefore state the following:

**A.   RELEVANT PROCEDURAL HISTORY IN THIS COURT**

1.     On February 19, 2014, Plaintiffs filed their Motion to Stay Action, [DE 7], which Motion was denied without prejudice on February 21, 2014, [DE 8], to be renewed if desired after all defendants were served.

2.     On May 7, 2014, and after all defendants were served, Plaintiffs filed their Renewed Motion to Stay.  [DE 26].

3.     On June 6, 2014, this Court again entered an Order denying without prejudice to renew Plaintiffs' Renewed Motion to Stay.  [DE 45].

4.     On September 18, 2014, Third Party Defendant United States filed its Answer(s) to the Third Party Complaint(s), [DE 73 and DE 74], after its Motion(s) to Dismiss Third Party Complaint(s), were denied.  [DE 72].

5.     On September 19, 2014, Counterclaim Defendant Buckalew filed his Answer to Crossclaim, [DE 75], after his Motion to  Dismiss Counterclaim, [DE 56], was denied.

6.     Accordingly, and now that those events described in this Court's June 6, 2014 Order have triggered the duty to file a Joint Scheduling Report, Plaintiffs now file their Second Renewed Motion to Stay.  (*See*, June 6, 2014 Order attached as Exhibit "1".

**B.     GROUNDS FOR RELIEF**

7.     On December 19, 2013, Plaintiff Buckalew filed this civil action (hereinafter, "the Florida action") seeking damages for the wrongful death of his decedents Jeffrey, Corinne, Jackson and Meriwether Buckalew.  The decedents were all onboard a Socata TBM 700 aircraft (the "accident aircraft") which crashed on December 20, 2011 near Morristown, New Jersey.

8.     On December 18, 2013, the day before filing the Florida action, Plaintiff Buckalew "first-filed" an action in Connecticut state court captioned *Buckalew, et al. v. Columbia Aircraft Sales, Inc., et al.,* Civil Action No. KNL-CV14-6019720-S, (hereinafter, "the Connecticut action"), against the same defendants named in the Florida action, making the same or substantially the same allegations against them in the Connecticut action that were made in the Florida action.

9.     Plaintiffs' claims against the defendants in both actions sound in product liability and/or negligence alleging, among other things, defects in the design or manufacture of the aircraft's icing protection system, which caused the crash of the accident aircraft.  The accident aircraft was designed and manufactured by defendant

Socata S.A.S. located in France.  Defendant Socata North America, Inc., located in Pembroke Pines, Florida, is the U.S.-based representative of the French manufacturers, and is involved in the distribution, sale and marketing of Socata model aircraft. Defendants Socata S.A.S. and Socata North America, Inc. are collectively referred to as the SOCATA defendants.  Defendant Columbia Aircraft Sales, Inc., an authorized sales distributor of the SOCATA defendants, sold the new accident aircraft in September 2005 to Cool Stream, LLC, a New York based entity not a party to this action but of which Plaintiffs' decedent Jeffrey Buckalew was the sole member.[1]

10.    Plaintiffs filed the Florida action after filing the Connecticut action against the same defendants solely as a protective action in the event that in the Connecticut action, the Court ultimately ruled that it could not properly subject the Socata defendants to personal jurisdiction and/or the Connecticut action was dismissed pursuant to a forum selection clause, as discussed further herein.  The filing of the Florida action was necessary to avoid statute of limitations issues in the event that some or all of the defendants were dismissed from the Connecticut action, and/or the Connecticut action itself was dismissed.

11.    Plaintiffs' Complaint in the Florida action made quite clear the reason or need for filing the Florida action.  Specifically, paragraph 16 of Plaintiffs' Complaint states:

> Notwithstanding all of the foregoing, a substantially similar lawsuit has been "first filed" in the state of Connecticut on December 18, 2013 and this "second filed" Civil Action is being filed solely based on anticipated challenges to jurisdiction and/or venue being made by some or all of these same defendants in the Connecticut action,

---

[1] Defendant Daher Aerospace, S.A.S., has been dismissed by Stipulation [DE 42] in the Florida action, and will likely be dismissed in the Connecticut action once that Court approves of the proper procedural method to do so.

> which challenges plaintiffs' believe are without merit or support, either in fact or law.

(DE 1, at ¶ 16).   Therefore, it is beyond question that Plaintiffs' chosen and desired forum for litigating these claims is Connecticut, and but for the anticipated jurisdictional challenges and/or forum selection clause defense, Plaintiffs would have had no need to have even filed the Florida action in the first place, especially since Florida has no connection to the crash whatsoever.

12.   The continuation of proceedings in the Florida action will result in the unnecessary expenditure of time and resources of this Court and the parties in the event that the Court in the Connecticut action rules that all parties are properly subject to personal jurisdiction in Connecticut and/or that the forum selection clause is unenforceable against Plaintiffs' decedents who were not parties to the sales contract. Therefore, sound judicial administration supports the staying of this action until all pending and/or future motions to dismiss are resolved in the Connecticut action. *Trujillo v. Conover & Co. Communications, Inc.*, 221 F.3d 1262, 1274 (11th Cir. 2000) (district court has broad discretion to stay action pending the resolution of a related case in another court as a matter of sound administration so long as the stay is not immoderate or indefinite).   Here, the stay would not be for an indefinite period of time contrary to the dictates of the *Trujillo* Court.   Rather, the stay would be limited in scope to coincide with rulings on two discrete issues by the Court in the Connecticut action.

## C.   RELEVANT PROCEDURAL HISTORY IN THE CONNECTICUT ACTION.

13.   On June 26, 2014, Plaintiffs served comprehensive written jurisdictional discovery on all defendants in the Connecticut action.   Under Connecticut rules, discovery could not be served until after the "return date", which was June 17, 2014.

4

14.     On July 21, 2014, the SOCATA defendants, as expected, filed their motion(s) to dismiss the Connecticut action asserting that they are not subject to personal jurisdiction in Connecticut.

15.     The written sales contract for the accident aircraft between defendant Columbia and Cool Stream, LLC (not a party in either lawsuit), contains a forum selection clause directing that lawsuits arising out of the sale of the aircraft be filed in Florida.

16.     Since initially Plaintiffs believed that defendant Columbia would raise this forum selection clause as a basis to seek dismissal of the Connecticut action, Plaintiffs also served comprehensive written "venue" discovery on all defendants in the Connecticut action on July 3, 2014 and July 16, 2014.

17.     However, instead of filing a motion in the Connecticut action based on the forum selection clause, defendant Columbia filed a Motion to Dismiss for Forum Non Conveniens on July 23, 2014.  Curiously, however, rather than ask the Connecticut court to rule on its Motion, Columbia has now twice asked the Connecticut court to defer the briefing of its Motion until after the Court decides the Socata defendants' Motion(s) to Dismiss for Lack of *In Personam* Jurisdiction.

18.     By agreement of the parties, the Connecticut action was recently transferred to the Complex Litigation Center in Hartford, CT and an initial conference with the Court is scheduled for October 20, 2014 at which time the Court will, among other things, enter a comprehensive scheduling or case management order, and also address the objections to Plaintiffs' discovery which have been filed by all defendants. (*See,* Exhibit "2").

5

**D. ARGUMENTS IN OPPOSITION TO STAY PREVIOUSLY RAISED BY THE SOCATA DEFENDANTS AND DEFENDANT COLUMBIA**

19.     The Socata defendants previously argued that this Florida action cannot be stayed under the principles of *Colorado River Conservation Dist. v. United* States, 424 U.S. 800, 817-818 (1976), and further contended that plaintiffs failed to cite any controlling authority supporting the issuance of a stay in this case.  [DE 38].

20.     On the contrary, *Trujillo v. Conover and Company Communications, Inc.*, 221 F.3d 1262 (11th Cir. 2000), previously cited by Plaintiffs, is a post-*Colorado River* case involving parallel proceedings in another non-federal forum which cites to other cases, in this Circuit and elsewhere, which engaged in a *Colorado River* analysis. Furthermore, the guiding principle of *Trujillo* -- that the entry of a stay can be appropriate so long as its duration is not indefinite in scope – was reaffirmed in *Moorer v. Demopolis Waterworks and Sewer Board*, 374 F.3d 994 (11th Cir. 2004) (noting that "a stay, not a dismissal, is the proper procedural mechanism for a district court to employ when deferring to a parallel state-court proceeding under the *Colorado River* doctrine").  *Id.* at 998 (quoting "*LaDuke v. Burlington Northern Railroad Co.,* 879 F.2d 1556, 1561-62 (7th Cir. 1989))".

21.     Even under a *Colorado River* analysis, it would be a proper exercise of this Court's discretion to enter a stay, limited as requested by Plaintiffs, given the facts and circumstances of this case.  *Will v. Calvert Fire Insurance Co.,* 437 U.S. 655, 663 (1978) ("decision to stay federal proceedings because of a concurrent state litigation remains one committed to the discretion of the district court").  A*lso see, Clinton v. Jones*, 520 U.S. 681, 117 S. Ct. 1636, 1650, 137 L. Ed. 2d 945 (1997) (discussing

district court's "broad discretion to stay proceedings as an incident to its power to control its own docket").

22.     The lynchpin of Socata's previous opposition to Plaintiffs' Renewed Motion to Stay hinged on the importance placed on the Third Party Complaints filed by the Socata defendants and defendant Columbia joining the United States as a party defendant.  Unfortunately, the procedural timeline which resulted in those Third Party Complaints being filed on May 5th (two days before Plaintiffs' Renewed Motion to Stay was filed on May 7th) could not go unaddressed and was raised by Plaintiffs in their Reply Memorandum.  [DE 44].

23.     That timeline was set forth, in pertinent part, in Plaintiffs' counsel's letter dated May 8, 2014, which read:

> As it relates to the timing of my filing of Plaintiffs' Renewed Motion to Stay Action, it is now quite obvious, based on the recent filing of your Third Party Complaint against the United States of America on behalf of your clients Socata, S.A.S. and Socata North America, Inc., that what you told me in our prior telephone conversation (and as confirmed in your e-mail to me dated May 1, 2014) was, to be kind, somewhat less than candid.
>
> Stated differently, your efforts at persuading me to agree to delay the filing of Plaintiffs' Renewed Motion to Stay Action had absolutely nothing to do with what "the Court would want" but instead had everything to do with your legal strategy to attempt to gain some tactical advantage over the plaintiffs by filing your Third Party Complaint before the Renewed Motion to Stay was filed.
>                                        . . .
> . . .Whether or not you ultimately obtain the tactical advantage you sought remains to be seen and will eventually be decided by the Court. . .

(*See,* Declaration of Richard E. Genter attached here as Exhibit "3", and Exhibits "D" and "F" to that Declaration, and previously attached in DE 44).

24.     To be blunt, the fact that the filing of defendants' Third Party Complaints preceded the filing of Plaintiffs' Renewed Motion to Stay Action by a mere 48 hours was, the "product of gamesmanship", and the type of "reactive" maneuver and "rush to judgment", expressly warned of and disfavored by Courts engaging in a *Colorado River* analysis.  *See, Lumen Construction Company v. Brant Construction Company*, 780 F.2d 691, 694 (7th Cir. 1985).

25.     The *Lumen* Court wisely observed:

> When a case proceeds on parallel tracks in state and federal court, the threat to efficient adjudication is self-evident.  But judicial economy is not the only value that is placed in jeopardy.  The legitimacy of the court system in the eyes of the public in fairness to the individual litigants also are endangered by duplicative suits that are the product of gamesmanship or that result in conflicting adjudications.

*See, Lumen*, 780 F.2d at 694.   The *Lumen* court noted that conflicting interlocutory rulings:

> "leads ineluctably to a 'rush to judgment' with each side attempting to push forward the litigation in the forum ruling in its favor on a preliminary matter.  (Citations omitted).  In the end, the forum that loses the race will have engaged in a 'grand waste of efforts'".

*Id.*

26.     Here, these early events of "gamesmanship" should serve to highlight what lies ahead should a stay NOT be entered by this Court.  In short, the defendants have done, and will continue to do, everything possible to impede the progress of the Connecticut action and create a "race" between this Court and the state court.  This unwanted and undesirable consequence can be avoided by the entry of a limited stay here so that neither Court engages in, as *Lumen* cautions, a "grand waste of efforts".

27.     Defendant Columbia, in addition to adopting all of the arguments raised by the Socata defendants in their Opposition, raised two additional arguments as grounds to deny Plaintiffs' Renewed Motion to Stay:  (a) that the Southern District of Florida was the venue contractually selected by the parties, and (b) that the Southern District of Florida was the more convenient forum.   [DE 37].

28.     Specifically, Columbia argued that "the parties entered into a contract years prior to the present litigation in which they set forth in no uncertain terms that the Southern District of Florida was their preferred forum".   (*See*, DE 37, Memorandum in Opposition at pgs. 2-3).

29.     However, as demonstrated in Plaintiffs' Reply in Opposition, [DE 43], that argument is factually incorrect and legally without merit.  On the contrary, the "contract" Columbia refers to is the Aircraft Purchase Agreement ("Purchase Agreement") entered into by and between defendant Columbia ("Seller") and Cool Stream, LLC ("Buyer"), a copy of which is attached hereto as Exhibit "4".  Columbia and Cool Stream are the only "parties" to the Purchase Agreement.

30.     Section 8 of the Purchase Agreement (hereinafter, the "forum selection clause") states in pertinent part:

**8.      APPLICABLE LAW, FORUM, PROCEDURES, ETC.**

(a)     This Purchase Agreement and the rights of the parties hereto arising directly or indirectly, under or in connection with this Purchase Agreement, shall in every respect be governed by the substantive law of the State of Florida without reference to its conflict of law rules.  Buyer and Seller acknowledge and agree that the United State District Court for the Southern District of Florida, or if such court lacks jurisdiction, the 17th Judicial Circuit Court (or its successor) in and for Broward County, Florida, shall be the exclusive venue and proper forum in which to adjudicate any

case or controversy arising, directly or indirectly, under or in connection with this Purchase Agreement and/or Buyer's ownership and/or operation of the Products purchased pursuant thereto. . . .

31.     As discovery in the Connecticut case will disclose, this forum selection clause was part of Columbia's "standard TBM contract". (*See,* e-mail dated August 29, 2005, attached as Exhibit "5"). Discovery in Connecticut will also disclose that not only was this boilerplate clause "non-negotiable" between the parties, it was, in fact, not a term that was subject to any negotiation by and between Cool Stream and Columbia. *See, Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 592-93 (1991) (contrasting analysis of negotiated forum selection clause with non-negotiated forum selection clause).

32.     Rather, discovery will disclose that this boilerplate, non-negotiable contract provision was actually drafted, written and insisted upon by the Socata defendants' and is a condition of sale for all Socata aircraft sold by and through the distribution network that Socata has established in the United States.[2]

33.     Here, the only parties bound by the terms of the forum selection clause are Cool Stream and Columbia. Jeffrey Buckalew did not sign the Purchase Agreement in any capacity other than as a member of Cool Stream, LLC (Exhibit "4" at pg. 6). The Purchase Agreement was not signed by Mr. Buckalew's wife, nor by his two minor children, who are all, without question, not "parties" to the Purchase Agreement. As such, none of their tort claims are governed or controlled by this forum selection clause.

---

[2]   Columbia is Socata's Authorized Distributor in more than a dozen states along the eastern United States, but not in Florida. (DE 1 at ¶ 5).

34.     At a minimum, the enforceability of this forum selection clause should be determined by a Connecticut state court, and, with all due deference to this Court, not by a Florida federal court that has likely never been asked to decide how or under what circumstances a Connecticut state court would interpret and/or enforce this type of clause.   In fact, it is remarkable on its face that Columbia has asked this Court to enforce a contractual forum selection clause, contained in a contract executed in Connecticut regarding a product sold in Connecticut, yet Columbia has not yet even asked the  Connecticut court in the pending Connecticut action to enforce that same clause.   Perhaps, that is because defendant Columbia knows it will not prevail with those arguments in Connecticut.

35.     Under Connecticut law, a forum selection clause does not deprive a court of jurisdiction unless the trial court determines, based on a multitude of factors, that the clause should be enforced.   *Reiner, Reiner and Bendett, P.C. v. The Cadle Company,* 278 Conn. 92, 897 A.2d 58 (2006).

36.     Furthermore, under *Reiner* it is the burden of the party seeking the benefit of the forum selection clause to seek enforcement of the clause with the Court.   *Id.* Thus, here it is incumbent upon Columbia to move in the Connecticut action for enforcement of the relied upon forum selection clause; not for Columbia, (nor this Court, for that matter) to presume its enforceability.   Furthermore, a critical issue as to enforceability will be whether the claims and parties in the lawsuit are subject to the forum selection clause itself.   *See*, generally, *Roby v. Corp. of Lloyd's*, 996 F.2d 1353,

1358-61 (2d Cir. 1993).  These issues are all best, if not required to be, resolved by the Court in the Connecticut action.[3]

37.    Finally, the Socata defendants cannot rely on this forum selection clause (or any of its provisions) since they claim they are not a party to the sales contract.  [DE 38 at pg. 14].  Therefore, should the Connecticut court ultimately rule that it has *in personam* jurisdiction over the Socata defendants, Plaintiffs' action can and should proceed in Connecticut.

38.    Regarding Columbia's claim that the Southern District of Florida is actually a more convenient forum for Columbia, it defies logic and credulity for Columbia to suggest that Plaintiffs' claims bear "only a tenuous connection" to Connecticut and that Florida would be a more convenient forum for it.

39.    On the contrary, defendant Columbia is a Connecticut corporation with its sole business location located in Groton, Connecticut.  The sale and delivery of the aircraft, including all pre-sale negotiations and representations, took place in Connecticut and all of Columbia's witnesses involved in the sale transaction are located in Connecticut.

40.    Columbia is not even authorized to sell Socata aircraft in the State of Florida.  Furthermore, all maintenance on the subject aircraft was performed by Columbia employees in Connecticut pursuant to Socata's required maintenance procedures.  (*See*, Exhibit "6").

---

[3]  Even under Florida law, a forum selection clause "cannot ordinarily be invoked. . .against a party who did not sign the contract in which the provision occurs".  *See, Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1169 (11th Cir. 2009).  Moreover, with respect to non-negotiated forum selection clauses, courts will test "whether the clause was reasonably communicated to the consumer" by employing a "two-part test of reasonable communicativeness [,]" which "takes into account the clause's physical characteristics and whether the plaintiffs had the ability to become meaningfully informed of the clause and to reject its terms".  *Krenkel v. Kerzner Int'l Hotels Ltd.,* 579 f.3d 1279, 1281 (11th Cir. 2009) *(per curium)*.

41.     Finally, conspicuous by its absence is any suggestion by Columbia that Florida has some actual connection to Plaintiffs' claims.  In fact, Florida has almost no connection with Plaintiffs' claims, other than by virtue of the insertion of the forum selection clause in the Purchase Agreement.  The subject aircraft departed from an airport in New Jersey and the crash occurred in New Jersey; thus, all eye and ear witnesses to the pre-flight and crash event itself are located there.  Furthermore, the air traffic controllers involved in the handling of the subject aircraft are located in either New Jersey or New York, therefore a Connecticut forum is far more convenient to them as well.

WHEREFORE, Plaintiffs respectfully requests that this Court enter an Order staying this action until all personal jurisdction issues and/or the enforceability of a forum selection clause are resolved in the "first filed" Connecticut action.

## MEMORANDUM OF LAW

**I.      INTRODUCTION AND PROCEDURAL HISTORY**

For the purposes of brevity, Plaintiffs incorporate by reference all of the allegations, relevant procedural history, grounds for relief and arguments set forth in their Second Renewed Motion to Stay Action and for those reasons, together with the reasons set forth in this Memorandum of Law, respectfully request that the Court enter an Order staying this action pending the resolution of issues of personal jurisdiction and/or the enforceability of a forum selection clause in a "first-filed" action pending in Connecticut state court arising out of the same airplane crash that is the subject of this Florida action.

## II.     ARGUMENT

Counsel for the Socata defendants and defendant Columbia have advised they continue to oppose Plaintiffs request to stay the Florida action, although the defendants have not, at present, articulated any additional or new bases upon which they oppose the requested stay, other than what is contained in their prior opposition papers. Accordingly, pursuant to Local Rule 7.1(c), Plaintiffs reserve the right to serve a reply memorandum after receipt of defendants' memorandum of law opposing this motion. However, at this time Plaintiffs will address some of the arguments in opposition previously raised by the defendants.

### A.     This Action And Plaintiffs' State Court Action Are "Parallel" Actions Under *Colorado River*.

In *Ambrosia Coal and Constr. Co. v. Pages' Morales,* 368 F.2d 1320, 1329-30 (11th Cir. 2004), the Court made clear that identicality of parties, issues and requests for relief were not needed in order for cases to be deemed "parallel" and that "[s]uch formalistic requirements would fly in the face of the Supreme Court's clear efforts to fashion a flexible and holistic test for applying for the *Colorado River* abstention principle". *Id.* at 1330.   Rather, under *Colorado River*, actions are "parallel" "when federal and state proceedings involve substantially the same parties and substantially the same issues". *Id.* at 1330, *citing Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1288 (7th Cir. 1988) ("The addition of the federal defendants in the federal suit, by itself, does not destroy the parallel natue of the case.  If it did, parties could avoid the *Colorado River* doctrine by the simple expedient of naming additional parties").   Here, Plaintiffs' Connecticut lawsuit is virtually identical to the lawsuit plaintiffs' filed in this Court:  it has the same parties and causes of action.  Nearly every

paragraph of the two lawsuits read either exactly or virtually the same, except for the allegations as to jurisdiction and venue and the specific allegation in paragraph 16 that the Florida action was filed as a protective action.

    B.    The Entry Of A Stay Order Is Justified Under *Colorado River*

This case falls into what has been labeled the "wise judicial administration" exception to the exercise of federal jurisdiction.  *See, Allied Machinery Service, Inc. v. Caterpillar, Inc.*, 841 F. Supp. 406 (S.D. Fla. 1993).  Plaintiff filed this lawsuit in federal court in Florida solely because of the forum selection clause issue and in the event that the Socata defendants were not subject to jurisdiction in Connecticut.  The forum selection clause mandated that suit could only be filed in this Court, and not even in a Florida state court.  Now, simply because of that clause, which may or may not be enforceable, the defendants have "manipulated the chess board" such that by joining the United States, they hope to strip Plaintiffs of control over their own lawsuit and force Plaintiffs to proceed in a forum that they did not willingly choose, and more importantly has virtually no connection to this accident.

An analysis of the relevant factors set forth in *Colorado River* and its progeny further confirms that "exceptional circumstances" exist justifying the entry of a stay.

    1.    **Jurisdiction Over Property**

Plaintiffs agree with Socata that this factor does not apply to this case.

    2.    **Inconvenience Of Federal Forum**

This factor focuses primarily on the physical proximity of the federal forum to the evidence and witnesses.  *Ambrosia Coal*, 369 F.3d at 1332.  Here, all of the relevant witnesses and documents regarding the pre-sale negotiations and representations, and the actual sale, delivery and maintenance of the aircraft are located in Connecticut.  Not

a single Columbia witness, employee or document is located in Florida.  Neither the plaintiff, nor any of his witnesses or documents, are located in Florida.  Moreover, Socata concedes that its witnesses most knowledgeable regarding the design and manufacture of the aircraft are located in France (not Florida) and its witnesses most knowledgeable regarding the aircraft's Pilot Operating Handbook and other written instructions are also located in France (not Florida).  For Socata North America to claim that it would create a hardship to send a witness(es) from Florida to testify at trial in Connecticut is hardly credible, especially when discovery will confirm that Socata as part of its normal business operations regularly sends employees to Connecticut to conduct audits, inspections, evaluations of, and provide assistance to, Columbia in its Socata sales and service related activities.[4]

### 3.   Desirability Of Avoiding Piecemeal Litigation

On this point, defendants completely miss the mark.  In fact, by insisting that this case go forward because of the joinder of the United States, defendants have actually increased the potential for piecemeal litigation, thus supporting abstention.

It is axiomatic that Plaintiffs' direct claims against the United States cannot be brought in the first instance in this Court.  28 U.S.C. § 1402(b).  Furthermore, Plaintiffs are not required, nor can they be compelled, to assert their claims against the United States in this Court.  *See, Whitmire v. Parton*, 2 F.R.D. 83 (E.D. Tenn. 1941); *Herrington v. Jones,* 2 F.R.D. 108 (E.D. La. 1941) (discussing "permissive provision of Rule 14"), *also see,* F.R.C.P. 14(a)(3) ("plaintiff **may assert** against the third party defendant").

---

[4]  Finally, all of the air traffic control witnesses and documents regarding this case are located either in New York or New Jersey (the location of the facilities involved with the subject aircraft and which location (New York) constitutes a proper venue for Plaintiffs' direct claims against the United States.  These witnesses and documents are allocated within minutes or hours by car from Connecticut.

Thus, the likelihood for inconsistent results would now be far greater since Plaintiffs intend to file suit against the United States in New York shortly.   Furthermore, the defendants could always bring a separate action for contribution or indemnity against the United States if it were ever determined by verdict or settlement in the Connecticut action that they were liable to the Plaintiffs in that case.

### 4.     Order In Which Jurisdiction Was Obtained By Each Forum

It cannot seriously be in dispute that Plaintiffs' Connecticut action was commenced prior to Plaintiffs' Florida action.   (*See*, Declaration of Joel T. Faxon, Esquire, attached here as Exhibit "7" and previously attached at DE 44).   Nevertheless, Plaintiffs agree that the relevant inquiry now, under *Colorado River*, is how much progress has been made in the two competing actions.   In reality, neither case has advanced very far on the merits and both cases are in their infancy.[5]   Accordingly, little resources of this Court and the parties have been expended to date.   Moreover, the defendants have long been aware of Plaintiffs' intentions regarding the Florida action and most of the acts or events of the defendants have been nothing more than calculated strategic maneuverings to improperly thwart Plaintiffs' stated desire and intention to proceed in its chosen form of Connecticut.

### 5.     Whether State Or Federal Law Will Apply

The relevant inquiry here is whether federal or state law applies.  *Ambrosia Coal,* 368 F.3d at 1334.   Here, all of plaintiffs' claims are governed by state law and not federal law, even if the United States remains a party.   As such, this factor favors abstention.  *Amason & Associates, Inc. v. Columbus Land Development, LLC,* 2014

---

[5] Attached as Exhibit "8" is the combined Docket Entries from the Connecticut action now pending in Hartford, Connecticut for comparative purposes.

U.S. Dist. LEXIS 14926 (N.D. Ala.) *(citing, Bankers Ins. Co. v. Countrywide Fin. Corp.,* 2012 U.S. Dist. LEXIS 93212, 2002 WL 2594341 *9 (M.D. Fla., July 5, 2012).

As for the issue of which state law applies, for this Court to find that Florida law applies based on the forum selection clause "preassumes the validity of the Agreement thereby thrusting the cart before the horse". *Ambrosia Coal,* 368 F.3d at 1334.

Furthermore, in their Complaint, Plaintiffs ask for the application of Connecticut law (or Virginia law where Plaintiffs' decedents were domiciled). (DE 1 at ¶ 76). Columbia, based in Connecticut, has a reasonable expectation of being sued in Connecticut and under Connecticut law, including that state's Product Liability Act, Conn. Gen. Stat. § 52-572(m). So, too, should the Socata defendants be subject to those claims to the extent they are ultimately determined to be subject to *in personam* jurisdiction in Connecticut.

Finally, this case does present a "complex question of state law that would be best resolved by a Connecticut state court"; specifically, whether a Connecticut court would apply Connecticut damage law against a resident defendant (Columbia) in a claim brought against it under § 52-572(m) by a nonresident plaintiff (Buckalew). *Villa Marina I,* 915 F.2d 7, 15 (1st Cir. 1990) (*citing, American Bankers Insurance v. First State Insurance Company*, 891 F.2d 882, 886 (11th Cir. 1990). Since there currently is a split of authority on this issue in Connecticut, resolution of that issue should be made by a Connecticut court.

### 6.  Adequacy Of State Court To Protect Parties' Right

For the reasons set forth in section 3 above, Connecticut can adequately protect the rights of the parties.

7. <u>**Other Factors**</u>

Socata's claim that plaintiff engaged in "forum shopping" is nonsense. Plaintiffs filed suit in Connecticut against a Connecticut seller for the sale of a product which took place in Connecticut. The Socata defendants were included in the state case because, notwithstanding their protestations to the contrary, they do business there and will be found subject to *in personam* jurisdiction there and, at a minimum, Plaintiffs should be afforded the opportunity to prove that in Connecticut. If anyone has engaged in forum shopping (or pre-suit forum manipulation) it is Socata, by insisting that Columbia use a Purchase Agreement written by Socata which includes a forum selection clause that directs claims to Florida.

III.   <u>**CONCLUSION**</u>

Although the pendency of an action in a state court is no bar to proceedings concerning the same matter in a federal court having jurisdiction, a district court is "under no compulsion to exercise that jurisdiction, especially where the controversy may be settled more expeditiously in the state court. *Will v. Calvert Fire Insurance Co.,* 437 U.S. at 655, 662-63 (1978) (*citing, Brillhart v. Excess Insurance Co.*, 316 U.S. 491, 494 (1942).

The principles of the *Colorado River* doctrine "rest on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation". *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817-18 (1976). Although federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them", they may defer to a parallel state proceeding under "limited" and "exceptional" circumstances. *Moorer,* 374

F.3d 997 (*citing Colorado River,* 424 U.S. at 817-18).   The aim of the *Colorado River* factors, and the additional factors announced in *Moses H. Cone Memorial Hospital v. Mercury Construction Co.*, 460 U.S. 1 (1983) do not rest on a mechanical checklist, but rather on a careful balancing of the factors as they apply in a given case, with the weight of each factor varying on a case by case basis.   *Moses H. Cone*, 460 U.S. at 16.   In applying the *Colorado River* abstention factors, it is important to note that each consideration should be applied in a "pragmatic, flexible manner with a view to the realities at hand".   *Moses H. Cone*, 460 U.S. at 21.   This list of factors is, however, not exhaustive, and one factor alone can be the sole motivating reason for the abstention.   *Id..   Also see,   Bosdorf v. Lamar Beach,* 79 F. Supp. 2d 1337, 1344 (S.D. Fla. 1999*).*

In the case at bar, the entry of a stay of limited duration to enable the issues of *in personam* jurisdiction and/or enforceability of the forum selection clause to be first considered and resolved by the Court in Connecticut will cause no harm or prejudice whatsoever to the defendants, and if the defendants are correct on those issues (as they boldly predict they will be), then the Connecticut court will issue a ruling in their favor on those issues, and the stay entered by this Court can be lifted, thereby returning the defendants to the exact same place and procedural posture they now find themselves.

Accordingly, Plaintiffs respectfully submit that the "exceptional circumstances" test under *Colorado River* has been satisfied and that this Court is otherwise justified under applicable law in granting the stay requested by Plaintiffs.   Plaintiffs respectfully request that their Second Renewed Motion to Stay Action be granted.

20

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1

Counsel for movant has conferred with all parties, and/or their counsel, who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the motion and has been unable to do so.  Specifically, defendants Columbia Aircraft Sales, Inc., Socata, S.A.S. and Socta North America, Inc. have advised that they continue to oppose the entry of the stay requested by Plaintiffs.  Third Party defendant United States takes no position at this time and counterclaim defendant Buckalew does not oppose the relief requested.

**PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES TRIABLE AS OF RIGHT.**

Date:  September 24, 2014              Respectfully submitted,

*Counsel for the Plaintiffs*

**HELLER WALDMAN, P.L.**

*/s/ Glen H. Waldman*
Glen H. Waldman, Esquire
3250 Mary Street, Suite 102
Coconut Grove, FL  33133
Telephone:  305-448-4144
E-mail:  gwaldman@hellerwaldman.com

                and

**LAW OFFICE OF RICHARD E. GENTER**

*/s/ Richard E. Genter*
Richard E. Genter, Esquire
(Admitted *Pro Hac Vice*)
610 Old York Road, Suite 200
Jenkintown, PA  19046
Telephone:  (215) 884-8190
E-mail:  richard@genterlaw.com

*Counsel for Plaintiffs*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of September, 2014, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF System.

/s/ Glen H. Waldman_____
Glen H. Waldman