IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | | |
|---|---|---|
| EDWARD BUCKALEW, as Executor of the Estate of JEFFREY BUCKALEW, Deceased, et al., | : : : : | No. 0:13-cv-62758-WPD |
| Plaintiffs | : | |
| v. | : : | |
| COLUMBIA AIRCRAFT SALES, INC., et al. | : : | |
| Defendants | : | |

**PLAINTIFFS' REPLY TO THE SOCATA DEFENDANTS'
OPPOSITION TO PLAINTIFFS' MOTION FOR VOLUNTARY DISMISSAL
<u>AGAINST DEFENDANT COLUMBIA AIRCRAFT SALES, INC., ONLY</u>**

**I.      INTRODUCTION**

Consistent with their mean-spirited attack on everything plaintiffs' counsel says or does, the Socata defendants have unleashed a litany of falsehoods and inaccuracies in support of their Armageddon-like venue fight. It is that fight, and that fight alone – precipitated and perpetuated by both Columbia and the Socata defendants – which has wasted, and continues to waste, the judicial resources of this Court.

**II.     ARGUMENT**

**A.     Paragraph 11 Of The Perrella Declaration Is A Complete Falsehood**

In an effort to bolster their argument that Buckalew knew long before December 2014 that Columbia would not raise the forum selection clause as a defense in the Connecticut action, Socata's attorney, Mr. Perrella, states in his Declaration:

> 11.     I have had repeated conversations with lead counsel for the Plaintiffs, Mr. Richard Genter, Esq., in which I have told him that the Socata Parties did not contend that the Plaintiffs were bound by the terms of the forum selection clause between Columbia and Cool Stream and that it was my understanding that Columbia also made no such contention.

(DE 103 at ¶ 11).

It is most disconcerting to read an attorney Declaration, sworn to under penalty of perjury, that makes factual allegations which are untrue. It is equally disconcerting that, most of the time, the only way to rebut those falsehoods is to submit a counter Declaration denying those statements. Fortunately, however, this instance is not like "most of the time", since here a record exists which confirms that Mr. Perrella's statements are, to be kind, not true.[1]

---

[1] Paragraph 11 of the Perrella Declaration is far worse than the "gamesmanship" previously engaged in by Attorney Perrella, about which plaintiffs' counsel expressed concerns to this Court. (*See,* DE44 and DE44-1 at Exhibit "F").

After Mr. Arnold confirmed at the December 11, 2014 hearing that Columbia was not raising the forum selection clause in connection with plaintiffs' wrongful death claims, the following colloquy took place:

> ATTY GENTER: And can I ask for that same agreement to be put on the record by Socata, that – that they won't, as, I guess, indirectly, attempt to enforce the forum selection clause that's in the agreement of sale?
>
> THE COURT: Well, you can always ask.
>
> ATTY. STRAIN: I need a minute to confer.
>
> THE COURT: Certainly.
>
> ATTY. STRAIN: Thank you.
>
> (Discussion held off the record.)[2]
>
> THE COURT: All right. We're back on the record.
>
> ATTY. STRAIN: And the specific request was whether the Socata defendants would –
>
> ATTY. GENTER: Raise the forum selection clause that's either in the agreement of sale between Cool Stream and Columbia or in the agreement of sale between Socata and Columbia for the purchase of this aircraft.
>
> ATTY. STRAIN: and the way that – the only – it's a two-step response, one being, **Socata defendants can't agree to that for reasons that I can't** – I mean, you know, I mean there are – **there are reasons that** – that **go beyond what I can disclose and talk about here today**. (Emphasis added).
>
> . . .

As if that exchange alone were not enough to confirm that Mr. Perrella's Declaration is false, the colloquy continued:

---

[2] At this point, Mr. Strain (Socata's counsel and a partner in Mr. Perrella's firm) and Mr. Arnold left the courtroom for several minutes. (*See,* Declaration of Richard E. Genter, attached as Exhibit "1" (Genter Decl.), and Declaration of Joel Faxon attached as Exhibit "2" (Faxon Decl.)).

2

> ATTY. GENTER: . . .I'm glad that Mr. Arnold has made the representation that he has, but I think we can see now that the forum selection clause issue has not gone away in this case. It's still there.
>
> THE COURT: It seems to be.
>
> ATTY. STRAIN: I just – I didn't know we were going to argue the merits of this.
>
> THE COURT: We're not arguing the merits –
>
> ATTY. GENTER: No.
>
> THE COURT: -- of it.
>
> ATTY. STRAIN: and so, you know, I don't – I don't really want to have to respond, but I feel like I should.
>
> It's a contract signed by two parties. And parties often agree to litigate, if need be, with certain limitations. They – it's in every contract. It's in every one of the contracts I sign. This isn't something new, as a way to avoid having to answer for a claim. It's an agreement amongst parties to a contract as to where they will resolve their disputes as to the claim. It's nothing – there's nothing negative about it. It's not about escaping liability. It's about parties agreeing to where and how they'll undergo to resolve their disputes.

(*See,* Excerpts of December 11, 2014 Hearing Transcript attached as Exhibit "3" at pgs. 24-29).

Mr. Perrella cannot produce a single document to confirm what he states in paragraph 11 of his Declaration, since there are none. However, if there were a morsel or shred of truth to what Mr. Perrella asserts, then certainly Mr. Strain's "tap-dance" at the December 11, 2014 hearing demonstrates that the "repeated conversations" to which Mr. Perrella refers in his Declaration are a figment of his imagination. If what Mr. Perrella claims even had a scintilla of veracity attached to it, then it would have been easy enough for Mr. Strain to say something like – "Your Honor, we've told Mr. Genter

3

on numerous other occasions that the forum selection clause is not in the case". Mr. Strain didn't say anything like that, because Socata, and its counsel (including Mr. Perrella), have never said anything like that. (*See*, Genter Decl.).

### B. The First Time Columbia Confirmed That The Forum Selection Clause Was Inapplicable To Plaintiffs' Claims Was In December 2014

The Socata defendants argue that Plaintiffs' Motion is based "almost exclusively on the false premise that they only recently learned that Columbia would not be asserting a forum selection clause in a contract between Columbia and third-parties not present in this litigation", and also argue that plaintiffs' lead counsel "has repeatedly been told by counsel for Columbia and the Socata Parties that they will not argue that the forum selection clause is binding on the plaintiffs". (DE 104, at pgs. 1 and 12). Clearly, that statement is untrue as to the Socata defendants, but as for defendant Columbia, Buckalew did not know for certain until December 2014 that Columbia would not be invoking the forum selection clause in the Connecticut litigation.

On December 4, 2014, Columbia filed its Memorandum in Support of its Objections to Plaintiffs' Discovery Re Jurisdiction and Venue in the Connecticut action, stating:

> With respect to Plaintiffs' venue discovery, these discovery requests only relate to the forum-selection clause in a contract between Columbia and a non-party to this action, Cool Stream, LLC. No party has argued that this forum-selection clause is binding or has any application in this action. . . .Cool Stream, LLC is not a party to any related action in Connecticut, Florida, or New York, and this non-party contract forum-selection clause has no relevance to this Connecticut litigation.

(*See*, Exhibit "4" at pg. 3).

4

This was the first time that Columbia, or its counsel, ever made a definitive statement like that regarding the forum selection clause.  In fact, since Columbia's Florida counsel, as late as October 14, 2014, was still arguing to this Court that the forum selection clause **was applicable** to plaintiffs' claims, (DE 76 at pgs. 3-4), the need to pin Columbia down on what its "actual" legal position was going to be became even more critical.  Therefore, after reading this statement in Columbia's Connecticut Discovery Memorandum, Buckalew's counsel elected to create a record at the December 11, 2014 hearing in order to have Mr. Arnold confirm his position, (which he did clear as a bell), especially since at the Initial Scheduling Conference held in Connecticut on October 20, 2014 (for which there was no record) Mr. Arnold, in response to counsel for Buckalew's query, told the Court that even though Columbia's *forum non conveniens* motion did not specifically mention the forum selection clause, Columbia's motion (when fully briefed) would nonetheless include arguments embracing the applicability of the forum selection clause.  (*See,* Genter Decl. and Faxon Decl.).[3]

### C.   Columbia's *Forum Non Conveniens* Motion In Connecticut

The Socata defendants argue that Buckalew "never mentioned" and "**apparently would prefer that this court not know**" of Columbia's pending *forum non conveniens* ("FNC") motion in Connecticut.  (emphasis added).  (DE 104, at pgs. 1 and 7).  This is sheer nonsense.

There has been no effort by Buckalew, intentional or otherwise, to conceal Columbia's pending FNC motion in Connecticut from this Court.  In fact, Columbia's

---

[3] Socata's arguments further miss the mark since regardless the "fence-straddling" going on in Connecticut, which Buckalew has acknowledged to this Court, (DE 76 at ¶ 16), Columbia was still asking this Court to enforce the forum selection clause, and it is that inconsistency (a designed strategy) which is prejudicial to Buckalew.

5

FNC motion has been raised, and argued, in numerous pleadings already filed in this Court.  Specifically, Plaintiffs' Second Renewed Motion to Stay filed on September 24, 2014 at ¶ 17 stated that in the Connecticut action "defendant Columbia filed a Motion to Dismiss for Forum Non Conveniens on July 23, 2014".  (DE 76 at ¶ 17).  In addition, the Joint Scheduling and Discovery Report filed by the parties on October 23, 2014 stated in ¶ 8(k) that in the Connecticut action "Columbia has filed a *forum non conveniens* motion. . .".  (DE 82 at pg. 13).  Buckalew's Reply Brief in Support of his Second Renewed Motion to Stay filed on October 21, 2014 also addressed the arguments surrounding Columbia's FNC motion in Connecticut and Buckalew even attached copies of his opposition papers to that FNC motion filed in Connecticut.  (DE 81 at pg. 5 and at DE 81-1).  Clearly, there has been no attempt by Buckalew to not tell this Court about Columbia's FNC motion.

Buckalew did not raise Columbia's FNC motion in his F.R.C.P. 41(a) motion for the sole reason that Buckalew does not believe that the pendency of that motion in Connecticut has any bearing on whether plaintiffs are entitled to seek a voluntary dismissal of Columbia in the Florida action.  How important could Columbia's FNC motion really be when it has asked the Connecticut Court to defer briefing on the motion for perhaps up to one year after it was filed?  Columbia has taken no action on its FNC motion for two reasons; one, it was filed simply to delay the Connecticut proceedings, and two, it doesn't have much chance of success.  It was not Buckalew's obligation to argue in his opening brief the lack of effect or impact Columbia's FNC motion in Connecticut has on Buckalew's motion for voluntary dismissal in Florida.  Obviously, the defendants believe (no surprise there) that Columbia's FNC motion is relevant; thus it

6

was their issue to raise in their opposition papers (which they have done) and it is for Buckalew to rebut in his Reply Brief(s) permitted under L.R. 7.1(c), which he will do.[4]

### 1. Columbia's Strategy To "Table" Its *Forum Non Conveniens* Motion In Connecticut Has Backfired

As is detailed further in Plaintiffs' Reply to Columbia's Opposition Brief, (DE 102), Columbia's strategic decision to file its Motion to Dismiss in Connecticut as a "placeholder" (without briefing or arguing that Motion) has backfired. As is painfully clear, Columbia's strategy was to use that Motion both as a "shield" to merits discovery in Connecticut and as a "sword" in the Florida action to keep alive the forum selection clause defense and prevent Buckalew from ever returning to Connecticut. That this improper and prejudicial strategy might now fail (and be uncovered for what it really is) cannot, however, act as an impediment to granting Buckalew's request for a voluntary dismissal.

### D. The Filing Of Plaintiffs' Motion For Voluntary Dismissal Of Columbia Was Not Triggered By The United States' 28 U.S.C. § 1404(a) Transfer Motion Filed In The Eastern District Of New York

As a result of Mr. Arnold's admission at the December 11, 2014 hearing, Buckalew ordered a copy of the hearing transcript from the court reporter, which transcript was received on or about December 29, 2014. (*See,* Exhibit "5") On January 3, 2015, five days after receiving the transcript (which included the New Year's holiday), plaintiffs' lead counsel (Mr. Genter) sent an e-mail to Andrew Brown, Esquire, ("Brown"), an attorney who does legal research on an independent contractor basis for Mr. Genter (a sole practitioner). That e-mail asked Mr. Brown if he had time to do "another Buckalew research project". On January 5, 2015, Mr. Brown responded that he was

---

[4] Even Socata's suggestion that Buckalew's counsel tried to "hide" this motion from this Court is insulting. Does Socata really think Buckalew's counsel is that dumb? Hopefully, not.

able to assist and later that week Mr. Genter and Mr. Brown discussed the matter by telephone.  On January 16, 2015, Mr. Genter e-mailed Mr. Brown and asked:  "Any progress on FRCP 41 research?".  Mr. Brown responded on January 19, 2015, "Have stuff to send tomorrow".  Having not yet received the "stuff" from Mr. Brown, Mr. Genter e-mailed Mr. Brown again on January 21, 2015, – "Just following up" – to which Mr. Brown responded "Putting stuff together now".  Thereafter, Mr. Brown forwarded his F.R.C.P. 41 research to Mr. Genter on January 21, 2015 and January 22, 2015.  (*See,* Declaration of Andrew Brown, attached as Exhibit "6").  (*Also, see* Genter Decl.).

This timeline clearly demonstrates that Buckalew intended to seek a dismissal of Columbia under F.R.C.P. 41 long before (by almost one month) the United States' January 26, 2015 letter to the Court in New York requesting a Pre-Motion Conference for the 28 U.S.C. § 1404(a) motion the United Sates wanted to file. Thus, Socata's suggestion that it was the United States' January 26, 2015 letter which triggered Buckalew's sudden "interest" in seeking a dismissal is flat-out wrong.[5]

### E.   The Southern District Of Florida Is Not A Proper Venue For Buckalew's FTCA Claims Under 28 U.S.C. § 1402(b)

Finally, the Socata defendants berate Buckalew's counsel for filing Buckalew's Federal Tort Claims Act (FTCA) lawsuit in the Eastern District of New York, "without offering any explanation of why" it was not filed here.  Socata continues their vitriol directed at plaintiffs' counsel, claiming he did "not even mention this third action, let

---

[5] Buckalew's counsel did not send his "meet and confer" letter regarding Buckalew's proposed Motion for Voluntary Dismissal until January 29, 2015 for two reasons:  (1) he wanted to read and digest the legal research Mr. Brown supplied to make certain the proposed request was valid; and (2) he wanted to have the motion relatively ready for filing, (which was not filed until February 5, 2015 because it took the defendants four (4) days to respond to plaintiffs "meet and confer" request), since he knew the defendants would not only object but, more importantly, he suspected Columbia would deploy some other strategic device to thwart plaintiffs' efforts (which it did by seeking leave to join Cool Stream as a third party defendant and leave to file a Counterclaim against the Estate of Jeffrey Buckalew).  (*See,* Genter Decl.).

alone the fact that the United States has filed a motion to transfer that action to this Court under 28 U.S.C. § 1404". (DE 104 at pg. 4).

This Court has never been kept in the dark about Buckalew's FTCA action filed in New York and, in fact, issues surrounding this lawsuit were specifically addressed in the Protective Order entered by this Court on December 9, 2014. (*See*, DE 92 at ¶ 6, addressing when confidential documents and information "may be used in the Buckalew plaintiffs' related action in the United States District Court for the Eastern District of New York").

Furthermore, the reason(s) why Buckalew did not, and could not, file his FTCA claims in Florida were previously addressed in Plaintiffs' Reply Brief in Support of his Second Renewed Motion to Stay Action filed on October 21, 2014 -- because venue for those FTCA claims against the United States was **only** proper under 28 U.S.C. § 1402(b) in Virginia (where plaintiffs are domiciled) or New York (where the air traffic control facilities involved are located). (DE 81 at pg. 4). This is the same position Buckalew has taken in response to the United States' §1404 transfer motion filed in New York. (*See,* Plaintiffs' Memorandum in Opposition to the United States' Motion to Transfer filed in the Eastern District of New York, attached as Exhibit "7").

Buckalew also advised this Court in that same pleading, (DE 81), that because there was another passenger onboard the aircraft who would be filing an FTCA lawsuit in New York (and now there is also third litigant – a subrogated insurance company – filing an FTCA lawsuit in New York), Buckalew did not expect the United States to seek a §1404 transfer of those claims to Florida, especially since none of the United States' witnesses are located here and those other two claims could not be brought or

9

transferred here either.  Moreover, even assuming Buckalew's FTCA action could be filed in this Court (which it could not), then this Court would be deemed "the transferor" Court for choice of law purposes on Buckalew's FTCA claims should the United States ever seek to transfer Buckalew's claims to New York where the other parties will file, a likely scenario in this case if Florida law is deemed to apply (as Socata and Columbia urge).[6]  (DE 81 at pg. 4).  In short, Buckalew's New York FTCA action is not, and never has been, a secret.

### III.    CONCLUSION

For all the foregoing reasons, together with the reasons set forth in Plaintiffs' Motion for Voluntary Dismissal of Defendant Columbia Aircraft Sales, Inc. Only, (DE 93), plaintiffs respectfully request that their Motion be granted.

Date:  March 5, 2015

Respectfully submitted,

*Counsel for the Plaintiffs*

**HELLER WALDMAN, P.L.**

*/s/ Glen H. Waldman*
Glen H. Waldman, Esquire
3250 Mary Street, Suite 102
Coconut Grove, FL  33133
Telephone:  305-448-4144
E-mail:  gwaldman@hellerwaldman.com

and

---

[6]  Should this Court ultimately apply Florida law to this case, the third party complaint against the United States will likely be dismissed since Florida law no longer recognizes joinder claims for contribution or indemnity.

10

**LAW OFFICE OF RICHARD E. GENTER**

*/s/ Richard E. Genter*
Richard E. Genter, Esquire
(Admitted *Pro Hac Vice*)
610 Old York Road, Suite 200
Jenkintown, PA  19046
Telephone:  (215) 884-8190
E-mail:  richard@genterlaw.com

*Counsel for Plaintiffs EDWARD BUCKALEW, Executor of the Estate of JEFFREY BUCKALEW, Deceased; EDWARD BUCKALEW, Executor of the Estate of CORINNE BUCKALEW, Deceased; EDWARD BUCKALEW, as Administrator of the Estate of JACKSON BUCKALEW, Deceased, and EDWARD BUCKALEW, as Administrator of the Estate of MERIWETHER BUCKALEW, Deceased*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 5th day of March 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF System.

                                              /s/ Glen H. Waldman
                                              Glen H. Waldman